# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| THICK TECH SYSTEMS, INC., <br>               PLAINTIFF <br><br> v. <br><br> METHUEN CONSTRUCTION CO., INC.; FLETCH'S SANDBLASTING & PAINTING, INC.; AND LIBERTY MUTUAL INSURANCE CO., <br>               DEFENDANTS <br><br> METHUEN CONSTRUCTION CO., INC., <br>               CROSSCLAIM PLAINTIFF <br><br> v. <br><br> FLETCH'S SANDBLASTING & PAINTING, INC., <br>               CROSSCLAIM DEFENDANT <br><br> FLETCH'S SANDBLASTING & PAINTING, INC., <br>               THIRD-PARTY PLAINTIFF <br><br> v. <br><br> FAY, SPOFFORD AND THORNDIKE LLC AND THORNDIKE, INC. D/B/A STANTEC CONSULTING SERVICES, INC., <br>               THIRD-PARTY DEFENDANT | CIVIL NO. 2:15-CV-76-DBH |

## ORDER ON MOTION TO DISMISS THIRD-PARTY COMPLAINT

The issue the parties ask me to decide on a pending motion to dismiss is whether the economic loss doctrine in Maine prevents a construction project subcontractor from recovering damages in negligence from the engineering firm that the owner earlier engaged to design the project. Because Maine law is uncertain and other parties' claims in this dispute, involving interrelated fact

issues, are currently in arbitration, I conclude that the most prudent course of action is to refrain from deciding this dispute until the arbitration process reaches its endpoint.

At the outset of this Miller Act dispute over a Navy construction and maintenance project at Portsmouth Naval Shipyard, a second tier subcontractor sued a first tier subcontractor, the prime contractor, and a bonding company. The project involved improvements to removable submarine covers; the dispute was over fireproofing installed by the second tier subcontractor. The second tier subcontractor asserted that the first tier subcontractor was negligent in its surface preparation work—thereby causing problems with the fireproofing application that it had to correct—and that it has not been paid for its work. Am. Compl. (ECF No. 18) ¶¶ 11, 13-22. There are crossclaims and counterclaims. Mediation failed (to date, the Navy has neither accepted nor rejected the fireproofing work, ECF No. 76), and that dispute, originally filed in this court, is now going to arbitration in accordance with the subcontract. ECF Nos. 39, 75.

But outside the arbitration, the first tier subcontractor, whom I will call Fletch's,[1] has sued, via a third-party complaint, the outfit that the Navy hired to design and engineer the project, an entity I will call Stantec.[2] ECF No. 63. Fletch's says that Fletch's "performed its work according to the plans that [Stantec] created" for the project, id. ¶ 16, but that Stantec was negligent in its

---

[1] Its full name is Fletch's Sandblasting & Painting, Inc.
[2] According to the third party complaint, the Navy contracted with Fay Spofford and Thorndike, which was both a Massachusetts LLC and a Massachusetts corporation, and which subsequently merged with Stantec Consulting Services, Inc. ECF No. 63 ¶¶ 2-4. Count IV, directed solely against Stantec, asserts that on account of the merger, Stantec is liable for any of the Fay Spofford and Thorndike entities' liabilities. Id. ¶¶ 43-46. Stantec has not challenged that assertion and I do not address it separately.

design and engineering, id. ¶ 21, and that is why "the fireproofing product began to blister, bubble and/or flake." Id. ¶¶ 17, 21. Fletch's asserts that Stantec owed a duty to Fletch's "to properly design and engineer the work that Fletch's was hired to perform," but that Stantec failed "to exercise due care in planning and engineering the project." Id. ¶¶ 24-25. Fletch's also says that Stantec breached its duty to Fletch's "by misrepresenting to [the general contractor] and Fletch's that [the structures] were suitable for Fletch's to work on." Id. ¶ 27. As a result, says Fletch's, it incurred expenses "in rendering additional services" to the prime contractor, "including the substantial time and expenses incurred in determining the cause of the fireproofing failures." Id. ¶ 31. Fletch's seeks to recover those expenses as well as any amounts it has to pay its second tier subcontractor and/or the prime contractor. Thus, it asserts tort claims for negligence and negligent misrepresentation by Stantec, with attendant counts for indemnification and contribution if Fletch's ultimately has to pay the second tier subcontractor or the prime contractor. Stantec has moved to dismiss the third-party complaint, relying on Maine's adoption of the economic loss doctrine.[3] ECF No. 71.

At this point it seems unclear what Fletch's damages are or will be. As I said earlier, the Navy has neither accepted nor rejected the fireproofing. And the arbitration has not yet assigned responsibility among Fletch's, its second tier subcontractor, the prime contractor, and the bonding company for any fireproofing problems or held-back wages and costs of materials. Until those

---

[3] The parties argue only Maine law and that is the law I apply.

issues are resolved, I do not know the nature or scope of Fletch's damages. At the same time, the coverage of Maine's economic loss doctrine is uncertain. See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litig., 613 F. Supp. 2d 108, 126-28 (D. Me. 2009), aff'd in part, rev'd in part sub nom. Anderson v. Hannaford Bros. Co., 659 F.3d 151 (1st Cir. 2011). The Law Court adopted the doctrine in 1995 for products where there were claims of negligence, negligent misrepresentation, and product liability. Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc., 659 A.2d 267, 269-70 (Me. 1995). The Law Court referred to the economic loss doctrine as the rule that there is to be no "tort recovery for a defective product's damage to itself." Id. at 270. The Law Court stated:

> The rationale underlying this rule is that damage to a product itself "means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.' The maintenance of product value and quality is precisely the purpose of express and implied warranties." A situation where the injury suffered is merely the "failure of the product to function properly," is distinguishable from those situations, traditionally within the purview of tort, where "the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property."

Id. (citations omitted).

The Law Court has had no occasion to address the economic loss doctrine since 1995. I am not at all certain how or whether it applies in this dispute between a subcontractor on a construction project and the engineer the owner hired to design and engineer the work. It is true that this federal court has previously applied the economic loss doctrine to a professional services dispute where the parties had a contract between them, Maine Rubber Int'l v. Envtl.

Mgmt. Grp., Inc., 298 F. Supp. 2d 133, 137-38 (D. Me. 2004); that Maine's Superior Court has recently held that privity between the parties is not required for the doctrine's applicability, Arundel Valley, LLC v. Branch River Plastics, Inc., Docket No. BCD-CV-13-15, 2014 Me. Super. LEXIS 276, at *17-18 (Me. Super. Ct. Nov. 5, 2014); and that Maine's tort law treatise warns that the economic loss doctrine is often implicated in cases asserting liability against architects, engineers and contractors. Jack H. Simmons, Donald N. Zillman, & David D. Gregory, Maine Tort Law § 9.36 n.1 (2004 ed.). But there is also respectable authority that subcontractors *can* recover in tort against engineering firms for negligently inaccurate reports that subcontractors subsequently rely upon in bidding on a project as a result of which they suffer pecuniary loss in performing their contracts. See Restatement (Second) of Torts § 552 cmt. h, illus. 9 (Am. Law Inst. 1977); see also Marc. M. Schneier, Annotation, Tort Liability of Project Architect or Engineer for Economic Damages Suffered by Contractor or Subcontractor, 61 A.L.R.6th 445 (2011) (collecting cases in both directions).

In light of the uncertainty and the Law Court's lack of opportunity to declare what the economic loss doctrine means in Maine twenty-two years after Peachtree, I would probably want to certify that issue to the Law Court. But I would be reluctant to do so when the scope of Fletch's damages is so uncertain, especially since the nature of damages is an important component of the economic loss doctrine. And for all I know, the outcome of the arbitration will be that Fletch's has no damages.

Accordingly, Stantec's motion to dismiss the third party complaint is **DENIED WITHOUT PREJUDICE**, and the parties shall **SHOW CAUSE** by July 5, 2017,

why this Court should not **STAY** all proceedings on Fletch's third-party complaint pending the outcome of arbitration in the rest of the case.[4]  See, e.g., Utley v. Goldman Sachs & Co., 883 F.2d 184, 187 (1st Cir. 1989) (recognizing "decision to stay litigation of non-arbitrable claims" as "one left to the district court as a matter of discretion to control its docket"); Hartford Fin. Sys., Inc. v. Florida Software Servs., 550 F. Supp. 1079, 1085 (D. Me. 1982) (same).

**SO ORDERED.**

**DATED THIS 21ST DAY OF JUNE, 2017**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[4] Other than the third party complaint, proceedings have already been stayed in this case pending arbitration.  See ECF No. 39.