# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| FLETCH'S SANDBLASTING & PAINTING, INC., )<br>)<br>THIRD-PARTY PLAINTIFF )<br>)<br>v. )<br>)<br>FAY, SPOFFORD, AND THORNDIKE LLC AND THORNDIKE, INC. D/B/A STANTEC CONSULTING SERVICES, INC., )<br>)<br>THIRD-PARTY DEFENDANT ) | CIVIL NO. 2:15-CV-76-DBH |

## DECISION AND ORDER ON STANTEC CONSULTING SERVICES, INC.'S RENEWED MOTION TO DISMISS THIRD-PARTY COMPLAINT

The issue here is whether Maine's economic loss doctrine prevents a subcontractor on a Navy project from suing a firm that the Navy (the owner) engaged for engineering and design services. The subcontractor seeks recovery for negligence and negligent misrepresentation that, it says, caused additional time and expenses in performing its work. I conclude that the economic loss doctrine prevents the claim.

In the original Miller Act dispute over a Navy construction and maintenance project at Portsmouth Naval Shipyard, a second-tier subcontractor sued first-tier subcontractor Fletch's Sandblasting & Painting, Inc. (Fletch's); the prime contractor; and a bonding company. The project involved improvements to removable submarine covers; the Miller Act dispute was over fireproofing installed in part by the second-tier subcontractor. There were crossclaims and

counterclaims. Mediation failed, but arbitration resolved all claims among those parties, and no award was made to any party. Order Confirming Arbitration Award and Entry of Judgment (ECF No. 114).

Outside the arbitration, Fletch's sued, via a third-party complaint, the outfit that the Navy had hired to perform the design, engineering and supervision. I will call it Stantec.[1] What remains of Fletch's third-party complaint after the arbitration award[2] is a tort claim asserting negligence and negligent misrepresentation by Stantec. Fletch's says that Fletch's "performed its work according to the plans that [Stantec] created" for the project, Third-Party Compl. ¶ 16 (ECF No. 63), but that Stantec was negligent in its design and engineering, id. ¶ 21, and that is why "the fireproofing product began to blister, bubble and/or flake," id. ¶ 17. Fletch's asserts that Stantec owed a duty to Fletch's "to properly design and engineer the work that Fletch's was hired to perform," but that Stantec failed "to exercise due care in planning and engineering the project." Id. ¶¶ 24-25. Fletch's also says that Stantec breached its duty to Fletch's "by misrepresenting to [the general contractor] and Fletch's that [the structures] were suitable for Fletch's to work on." Id. ¶ 27. As a result, says Fletch's, it incurred expenses "in rendering additional services" to the prime contractor, "including the substantial time and expense incurred in determining

---

[1] According to the third-party complaint, the Navy contracted with Fay, Spofford, and Thorndike, LLC and Fay, Spofford, and Thorndike, Inc., which subsequently merged with Stantec Consulting Services, Inc. Third-Party Compl. ¶¶ 2-4 (ECF No. 63). Count IV asserts that on account of a merger, Stantec is liable for any of the Fay, Spofford, and Thorndike entities' liabilities. Stantec has not challenged that assertion and I do not address it separately.

[2] Fletch's withdrew its claims for indemnification and contribution in light of the arbitrator's award. Fletch's Sandblasting & Painting, Inc.'s Objection to Stantec Consulting Services, Inc.'s Renewed Mot. to Dismiss ¶ 10 (ECF No. 122).

2

the cause of the fireproofing failures." Id. ¶ 31. Stantec has moved to dismiss the third-party complaint, relying on Maine's adoption of the economic loss doctrine. See Stantec's Mot. to Dismiss at 4 (ECF No. 71).

Maine's Law Court[3] adopted the economic loss doctrine in 1995 for claims of negligence, negligent misrepresentation and product liability. Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors, Inc, 659 A.2d 267, 269-70 (Me. 1995). In Peachtree, the plaintiffs purchased condominiums that were defective because of window failures. The plaintiffs' lawsuit was not against the condominium seller(s) or the general contractor who constructed the units, but against the manufacturer of the windows that the general contractor installed. The Law Court referred to the economic loss doctrine as the rule that there is to be no "tort recovery for a defective product's damage to itself," Oceanside at Pine Point Condo. Owners Ass'n, 659 A.2d at 270, and treated the condominium units as the product the plaintiffs purchased. The Law Court stated:

> The rationale underlying this rule is that damage to a product itself "means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.' The maintenance of product value and quality is precisely the purpose of express and implied warranties." A situation where the injury suffered is merely the "failure of the product to function properly," is distinguishable from those situations, traditionally within the purview of tort, where "the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of injury to his person or property."

Id. (internal citations omitted). In Peachtree, the condominium units the plaintiffs purchased did not meet customer expectations and the plaintiff

---

[3] The parties argue only Maine law and that is the law I apply.

purchasers received insufficient product value, but the Law Court held that they could not recover tort damages and were limited to warranty claims.

The Law Court has had no occasion to address the economic loss doctrine since 1995. Thus, this federal court and Maine's Superior Courts have had to extrapolate from the Peachtree decision in determining how or whether it applies to other circumstances. District of Maine cases have found it applicable to more than a physical product—for example, to engineering services, Maine Rubber Int'l v. Envtl. Mgmt. Grp., Inc., 298 F. Supp. 2d 133, 135 (D. Me. 2004) (discussing the doctrine in the context of an environmental engineering services contract). The Maine Superior Court has held that the economic loss doctrine precludes tort recovery even when there is no privity of contract between the parties, pointing out that in Peachtree the parties were not in privity. Valley v. Branch River Plastics, 2014 Me. Bus. & Consumer LEXIS 12, *14.[4] And Maine's tort law treatise warns that the economic loss doctrine is often implicated in cases asserting liability against architects, engineers and contractors. Simmons, Zillman & Furbish, Maine Tort Law § 9.36 n.1 (2018 ed).[5]

---

[4] In Peachtree, there was no suggestion that the condominium unit owners had any contract with the window manufacturer. But see Banknorth, N.A. v. BJ's Wholesale Club, 394 F. Supp. 2d 283, 287 (D. Me. 2005) ("not immediately clear in what circumstances Maine's economic loss doctrine might extend to parties not in privity"); New England Surfaces v. E.I. Du Pont de Nemours & Co., 517 F. Supp. 2d 466, 494-95 n.39 (D. Me. 2007) (declining to apply the economic loss doctrine to a claim for tortious interference with contractual rights and prospective economic interests because the contract allegedly interfered with was not between the parties).

[5] In In re Hannaford Bros. Co., 613 F. Supp. 2d 108, 126-28 (D. Me. 2009), I declined to extend the economic loss doctrine to a relationship between a grocery store and its customers where the customers sought to recover damages for assertedly negligent handling of their credit card and debit card data by the grocery store that permitted some of that data to be stolen by criminal third parties. I said that even if the electronic payment system that the grocer used could be considered a "defective product," the customers' claimed damages were not for "insufficient product value," the concern of Peachtree. Here, on the other hand, the alleged negligent design

For the fireproofing at issue here, Stantec sold no physical product (unlike the window manufacturer in Peachtree). It did contract with the Navy to provide design and engineering services, but it had no contractual relationship with Fletch's. Fletch's entered into a subcontract with the prime contractor on the project, but not with Stantec. Fletch's asserts no damages beyond the failures of the fireproofing product as it was applied in accordance with its subcontract with the prime contractor, and the expenses of attempting to remedy the failures—*i.e.,* Fletch's asserts no personal injury and no damage to other property such as its equipment.

So does Peachtree apply? I conclude that it does. Yes, there was no privity of contract between Fletch's and Stantec, but Fletch's did have the opportunity to negotiate the terms of its subcontract with the prime contractor and thereby establish its risks and liabilities on the construction project. Likewise, Stantec had a contract with the Navy, which presumably established its risks and liabilities for the engineering and design services. As Justice Horton of the Maine Superior Court has said:

> Injecting negligence liability into what is fundamentally a breach of warranty case not involving any damage to person or property would be inappropriate, because it would displace predictable contractual and warranty liability defined in the course of the transaction in favor of tort liability determined after the fact. The world of contract depends [in] large part on predictability of rights and obligations. Clearly, when a product causes personal injury or property damage, the harm can legitimately be viewed as a breach of a societal duty sounding in tort, as well as a breach of contractual and warranty duty, and tort remedies

---

and misrepresentation do appear to claim "insufficient product value" in Stantec's design services. If the Navy is dissatisfied with what it received, it could sue Stantec under the contract but not for a separate tort.

come into play, but when the product simply fails to perform as expected or guaranteed, there is no reason to depart from contractual and warranty remedies. This is essentially the basis for the Peachtree decision, and the court is constrained to follow it.

Valley, 2014 Me. Bus. & Consumer LEXIS 12, *14-15.[6] Justice Horton's reasoning applies here as well. Unlike Valley, this dispute is not about a physical product, but I am satisfied that the Law Court would apply the doctrine to a design and engineering services contract like the one Stantec entered into with the Navy. See Maine Rubber Int'l, Inc., 298 F. Supp. 2d at 135. There is no personal injury and no damage to other property, only the asserted design and engineering failure that made the installed fireproofing allegedly inadequate.[7] Thus, I conclude that the economic loss doctrine prevents this suit for negligence and negligent misrepresentation.[8]

---

[6] In C&M Prop. Mgmt., LLC v. Moark, LLC, 2016 U.S. Dist. LEXIS 43082, *13 (D. Me. 2016), this court could not determine from the pleadings that a negligence claim concerned the value of goods and services over which the parties bargained (the plaintiff pest control service asserted that the defendant landowner had not exercised reasonable care to ensure that its facilities were safe for the pest control efforts) and therefore declined to dismiss the negligence claim at that stage. Here there is no uncertainty.

[7] One case in this District seems to hold that the economic loss doctrine applies in the case of intentional fraud "by a seller to a buyer where the misrepresentation concerns the quality of the goods or product promised in the sales contract." American Aerial Servs., Inc. v. Terex USA, LLC, 39 F. Supp. 3d 95, 111 (D. Me. 2014). But a Maine Superior Court case seems to disagree. See Everest v. Leviton Mfg. Co., 2006 Me. Super. LEXIS 12, *6 (2006) (economic loss doctrine does not apply where the plaintiff claims that the defendant acted fraudulently and purposefully failed to warn consumers of product dangers). In any event, there is no claim of intentional misrepresentation in this case.

[8] Another way of reaching this conclusion is to say that Stantec had no duty to Fletch's. See Schmid Pipeline Const., Inc. v. Summit Natural Gas, 2014 WL 3600437 at *4 (D. Me. 2014) ("Whether a court formally extends application of the economic loss doctrine to bar tort recovery, or whether a court determines that recognition of a duty in tort under the circumstances is not appropriate, the result is the same."); Banknorth, N.A., 394 F. Supp. 2d at 287 ("[O]ther states appear to view the economic loss doctrine as a proxy for determining whether a defendant owes a special duty to the plaintiff, and undertake a foreseeability analysis in applying the doctrine.") (internal citations omitted). In many ways, a court's decision on the application of the economic loss doctrine in a particular situation is based on the court's assessment as to whether the circumstances warrant the imposition of a tort duty, rather than being based on the nature of the claimed loss (*i.e.*, whether the party seeks to recover for an economic loss).

The third-party defendant Stantec's motion to dismiss is **GRANTED**.[9]

**SO ORDERED.**

**DATED THIS 21ST DAY OF FEBRUARY, 2019**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[9] I am satisfied that this is the proper resolution of the dispute. If for some reason Fletch's should appeal, however, I believe certification of the economic loss doctrine's scope to the Maine Law Court would be the preferred method of reviewing the law, given the 24 years since the Law Court last spoke on the topic and the difficulties this court and the Maine Superior Court have had in defining the doctrine's scope. For now, however, I have followed the parties' advice to rule without certifying.